UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, )<br>       Plaintiff, )<br>        )<br>    v. )<br>        )<br>UNITED STATES PARK POLICE, )<br>       Defendant. )<br>        ) | Civil Action No. 1:19-cv-01502-TSC |

# Human Rights Defense Center's Opposition to United States Park Police's Motion for Summary Judgment and Cross-Motion for Summary Judgment

This case is a narrow FOIA dispute. The Human Rights Defense Center has decided to concede the EEO redactions and only challenges redactions in three remaining documents. FOIA Exemption 6 does not support these redactions because they do not prevent a clearly unwarranted invasion of personal privacy. HRDC also opposes the Park Police's attempt to claw back previously released information.

### Factual History of HRDC's FOIA Request and USPP's Redactions

HRDC—which was previously named Prisoners' Legal News, after its flagship publication—has spent the last thirty years dedicated to public education, prisoner education, advocacy, and outreach to support the rights of prisoners and to further basic human rights. To accomplish its mission, it gathers information from governmental entities around the country and publishes the

1

information in its journals and on its websites. *See* Declaration of Paul Wright ("Wright Decl.") ¶¶ 2-4; *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 19 (D.D.C. 2006) (holding that Prison Legal News was entitled to a FOIA public-interest fee waiver for a request seeking settlements and judgments paid by the Federal Bureau of Prisons).

As part of its ongoing reporting, HRDC submitted a FOIA request to the U.S. Park Police. *See* Wright Decl. ¶ 3; Defendant's Statement of Material Facts as to which there is No Genuine Issue [ECF 23-2] ("Def's SMF") ¶ 1. The parties have worked cooperatively to narrow the issues. Upon review of the Defendant's motion, HRDC has decided not to challenge the redactions on the EEO claims. Wright Decl. ¶ 5. Now, all that is left for the Court to decide is the propriety of redacting the identities of claimants and tortfeasors in three tort claims:

1. An assault by a Park Police sergeant on a woman visiting the Lincoln Memorial. Park Police Internal Affairs Unit sustained the woman's complaint, and the Park Police ultimately settled her claim for $17,500.00. Wright Decl. ¶ 8.[1]

2. Injuries suffered by a claimant when the Park Police SWAT team forcibly entered a residence, knocked claimant to the floor, twisted her arm, and tore her rotator cuff. The Park Police paid $13,500.00 to settle this claim. Wright Decl. ¶ 9.

3. The unconstitutional ejection of a member of the public from a meeting of the D.C. Taxicab Commission. The Park Police paid $15,000.00 to settle this claim. Wright Decl. ¶ 10. The Park Police previously agreed to release the name of the claimant, but has not

---

[1] USPP's *Vaughn* index claims that release of certain medical-related information in this document would violate the Health Insurance Portability and Accountability Act. While HRDC is not seeking access to that information, it notes that the Park Police is not a covered entity under HIPAA, *See* 45 C.F.R. § 160.103. This overreach is emblematic of the Park Police's reflexive attempt at avoiding transparency.

provided the information and defends the propriety of the redaction in its Motion for Summary Judgment. *See id.* Exhibit A to Wright Decl., p. 7 ("USPP will unredact because this is public information.").

## Legal Argument

**I.      A government agency bears the burden of justifying withholdings in a FOIA summary judgment motion.**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Courts must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In a FOIA case, the agency bears the burden to justify nondisclosure. 5 U.S.C. § 552(a)(4)(B). *See, e.g.*, U*.S. DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989). The government "bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

The agency must sustain its burden by submitting detailed affidavits or declarations that identify the records at issue and show why they fall under the claimed exemptions. *See Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). The standard USPP points to—that the defending agency must only provide a "logical" or "plausible" excuse for non-disclosure—is limited to issues involving national security and

reference to classified information. *See Wolf v. CIA*, 473 F.3d 370, 374-74 (D.C. Cir. 2007). But in a case about run-of-the-mill documents, "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992.

Courts review agency FOIA decisions de novo, and may examine the contents of disputed records *in camera* to determine whether the agencies should disclose them. 5 U.S.C. § 552(a)(4)(B).

## II. Exemption 6, the ground the USPP attempts to stand on, does not shield disclosure.

The Freedom of Information Act arose from concerns over the "mushrooming growth of Government secrecy." H.R. Rep. No. 89-1497, at 2 (1966). The Supreme Court has recognized that FOIA represents the general philosophy of full agency disclosure unless the information is exempt under delineated statutory language. *See U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994) ("[D]isclosure, not secrecy, is the dominant objective of FOIA." Id., quoting Dep't. of Air Force v. Rose, 425 U.S. 352, 361 (1976)). The statute serves as a means for citizens to know "what their government is up to." *U.S. DOJ*, 489 U.S. at 773, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (citations omitted). "This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171-72, 124 S. Ct. 1570, 1580 (2004)

The Park Police claims support in FOIA Exemption 6 for all the redactions at issue. That exemption permits withholding of "personnel and medical files and similar files the disclosure of

4

which would constitute a *clearly unwarranted* invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). The primary purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (rejecting claim that settlement agreements are categorically exempt under Exemption 6) (quoting *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). Exemption 6 "does not categorically exempt individuals' identities." *Id.* (citation omitted). Rather, "[t]he scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

To decide what constitutes a "clearly unwarranted privacy invasion," a court should "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted). The burden remains on the government to justify any withholdings. *Id.*

A defendant must specifically describe the interest its withholding will protect; formulaic recitations cannot carry the day. *Stonehill v. IRS*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) ("In short, the government offers no explanation as to why disclosure of this particular agent's name would cause embarrassment, undue harassment, etc."), *aff'd*, 558 F.3d 534, 385 U.S. App. D.C. 18 (D.C. Cir. 2009).[2]

---

[2] Exemption 6 stands in "marked contrast" to Exemption 7(c). *Nat'l Archives & Records Admin.*, 541 U.S. at 165-66, 124 S. Ct. at 1580. Exemption 6 allows withholding only where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)**.** Exemption 7(c), not relied on here, allows withholding when a disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c). Courts must heed the narrower reach of Exemption 6—it is the considered judgment of Congress not a "mere accident in drafting." *Nat'l Archives & Records Admin.*, 541 U.S. at 165-66, 124 S. Ct. at 1577. The USPP has not met this high threshold for failure to release the requested unredacted information.

USPP identifies no specific privacy interest that would be violated by disclosing the names of the individuals identified in any of the claims here, let alone substantial ones. Exemption 6 protects only *substantial* privacy interests, which arise only when information divulges something revealing or likely to lead to "embarrassment," "disgrace," or "practical disabilities, such as loss of employment or friends." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 377 (1976); *see Hooker v. U.S. HHS*, 887 F. Supp. 2d 40, 60-61 (D.D.C. 2012) ("merely asserting in conclusory terms that disclosure of [] information would constitute an invasion of privacy … failed to articulate a substantial privacy interest"). Instead, the Park Police describes every claimed interest exactly the same way on the *Vaughn* index. There is no examination of the specific nature of the claims or attempt at describing what sort of *substantial* privacy interest might be present.

Nor is there any weighing of the public's right to know what its government, especially its armed agents, are up to. The Park Police's attempt to withhold the identity of its personnel who committed tortious wrongdoings which prompted a payout from public funds conflicts with the very purpose of FOIA. The statute exits "to permit the public to decide for itself whether government action is proper." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982). It follows that alleged governmental bad actors cannot claim a sufficiently significant privacy interest in their identity automatically, as USPP appears to assert here. That is why federal government employees' privacy interests are diminished where they have been investigated for misfeasance relating to the performance of their official duties. *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992); *cf. ACLU v. U.S. DOJ*, 655 F.3d 1, 7 (D.C. Cir. 2011) ("disclosure of … public pleas is at the lower end of the privacy spectrum.").

Identifying information facilitates investigations and research that enables HRDC and the public to understand "what their government is up to." *Reporters Comm.*, 489 U.S. at 773. Here, the public has a strong interest in knowing exactly which officials were involved in an allegedly wrongful conduct, like excessive force, which led to payment of public funds disclosed in the Settlement. As the Court of Appeals for the D.C. Circuit held in an earlier FOIA case in which HRDC sought settlement agreements from the Bureau of Prisons:

> Identifying employees who repeatedly engage in tortious or discriminatory conduct will shed light on an agency's performance of its statutory duties. This, in turn, will further the public interest in ensuring that disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner. It may also help root out the misuse of public funds, an interest typically favoring disclosure.

*Samuels*, 787 F.3d at 1151 (citations omitted). Access to the identities of the individuals named in these documents will reveal whether the officials accused are multiple offenders, how much taxpayer money has been used to resolve claims against those individuals, and whether they continue to be employed by the USPP. Knowing which police officers have committed tortious job-related conduct might be the quintessential public interest.[3]

---

[3] Unfortunately, recent events have only clarified the public's interest in monitoring use of force complaints against Law Enforcement Officers. Derek Chauvin, Garrett Rolfe, and Jason Van Dyke all had use of force complaint histories before they killed someone while on duty. *See, e.g.*, Derek Hawkins, "Officer charged in George Floyd's death used fatal force before and had history of complaints," *The Washington Post* (May 29, 2021 6:47 p.m. EDT), https://www.washingtonpost.com/nation/2020/05/29/officer-charged-george-floyds-death-used-fatal-force-before-had-history-complaints/; Elisha Fieldstadt, "Officer who shot Rayshard Brooks disciplined for use of force with firearm in 2016," NBC News (June 18, 2020, 1:43 PM EDT), https://www.nbcnews.com/news/us-news/officer-who-shot-rayshard-brooks-disciplined-use-force-firearm-2016-n1231163; Chuck Goudie, "At least 18 complaints filed against CPD Officer Jason Van Dyke, now charged with murder," ABC7 Eyewitness News (Nov. 24, 2015), https://abc7chicago.com/jason-van-dyke-vandyke-chicago-cop-charged-laquan-mcdonald/1098265/.

### III.     FOIA Does Not Allow an Agency to Claw Back Information

The Park Police has asked HRDC to destroy and agree to not report on two records in which it had released the claimant's names—Document 7 (an EEO claim) and Document 15 (a tort claim). Wright Decl. ¶¶ 7-8. The government provides no legal support for this request. Unlike Federal Rule of Civil Procedure 26(b)(5)(B) governing discovery, FOIA contains no claw back provision. *See Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) (distinguishing the two processes).

The request to claw back the claimant's identity in Document 15 is particularly unsupportable. USPP titled the PDF using the claimant's name: "Brenton v. Park Police." *See* Exhibit B to Wright Decl., p. 6. The name is even repeated in the Vaughn index at p. 13. The agency cannot now say it sought to protect the claimant's privacy.

In any event, there are no grounds under which to request these claw backs. Any such attempt to prevent a member of the news media from publishing what it knows should be considered an unconstitutional prior restraint and subject to a high bar. *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971).

### Conclusion

An agency acts not just through official policy pronouncements, but through its people. Revealing the redacted identities in the three documents at issue will allow the HRDC to continue its reporting on what the government is up to—in this case, which armed agents of the state are hurting citizens.

This Court should order the USPP to release the redacted identities in the three tort claim documents. Nor should it allow it to claw back information it has already released.

Dated: April 26, 2021

                                                Respectfully submitted,

                                                */s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Counsel for Human Rights Defense Center