# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER**, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-01502-TSC |
| | ) | |
| **UNITED STATES PARK POLICE**, | ) | |
| Defendant. | ) | |
| | ) | |

## HUMAN RIGHTS DEFENSE CENTER'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

_____

After the parties have cooperated in narrowing the issues, only redactions in four documents remain in dispute. The central inquiry remaining is whether the public's right to know what its government does outweighs any privacy rights that exist in the redacted information. Significantly three weeks ago, a unanimous panel of the United States Court of Appeals for the District of Columbia clarified this inquiry when it released *Reporters Committee for Freedom of the Press, et al. v. Federal Bureau of Investigation, et al.*, No. 20-5091, ___ F. 4th ___, 2021 WL 2753938, 2021 U.S. App. LEXIS 19762 (D.C. Cir. July 2, 2021). The Defendant does not meet the requirements of that decision. Additional, the Defendant has no authority by which it can claw back information through FOIA.

## I.     The Circuit Court Detailed FOIA's New 2016 Requirements

In 2016, Congress strengthened FOIA with the FOIA Improvement Act, Pub. L. No. 1140185, 130 Stat. 538 (2016). In that Act, Congress mandated that FOIA exemptions may be applied only

when an agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if a "disclosure is prohibited by law." *Id.* (codified at 5 U.S.C. § 552(a)(8)(A)(i)).

*Reporters Committee* is the first time that the D.C. Circuit has analyzed the import of that standard. In its opinion, the D.C. Circuit explains that "the foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reporters Comm.*, 2021 WL 2753938, at *12, 2021 U.S. App. LEXIS 19762, at *32-33 (D.C. Cir. July 2, 2021) (citations omitted). In its decision, the court explained that it is "apparent from the statutory text alone that the government's successful invocation of a FOIA exemption cannot justify its withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result from the material's release." *Id.* at WL *11, LEXIS *32 n.2. In that inquiry, agencies "cannot rely on mere speculative or abstract fears, or fear of embarrassment to withhold information. Nor may the government meet its burden with generalized assertions." *Id.* at WL*11, LEXIS *32 (cleaned up). Rather, agencies must "specifically and thoughtfully determine whether it reasonably foresees that disclosure of each particular record would harm an interest protected by the exemption." *Id.* at WL *14, LEXIS at *39 (citations omitted). "What is needed is a focused and concrete demonstration" in the "specific context" of the material of the harm the agency expects to occur. *Id.* at WL *11, LEXIS *33. In summary, to support a withholding, an agency must describe harm that "would" occur—not what "could." *Id.* The Park Police has not met that burden. All the Defendant has said is that the people named "*could* be subject to embarrassment, harassment and undue public attention." Defendant's Reply in Support of Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, ECF No. 27, p. 5. (emphasis added). The Park Police's suppositions do not pass the Circuit Court's muster.

## II.      The Public Interest in This Information Is Significant

Even if the Park Police had specifically described a harm that would occur with the release of any of the contested redactions, that harm would be trumped by the public interest in disclosing tortious and unconstitutional wrongdoing on the part of Park Police officers. To recap, HRDC seeks five names:

- The names of two Park Police officers involved in an assault of a tourist at the Lincoln Memorial—the case settled for $17,500. (*Vaughn* Index Doc. No. 15);

- The names of a claimant and the Park Police officer who tore her rotator cuff while the agency was trying to arrest someone else—the case settled for $13,500. (*Vaughn* Index Doc. No. 16); and

- The name of the Park Police officer who ejected a reporter from a public meeting because he was recording it—the case settled for $15,000. (*Vaughn* Index Doc. No. 17).

In fact, the D.C. Circuit Court has already explained the public interest in such documents when this very Plaintiff sought equivalent records from the Federal Bureau of Prisons.

> PLN seeks documents regarding specific events that occurred within Bureau facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended. Identifying employees who repeatedly engage in tortious or discriminatory conduct will shed light on an agency's performance of its statutory duties. This, in turn, will further the public interest in ensuring that disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner. It may also help root out the misuse of public funds, an interest typically favoring disclosure.

*Prison Legal News v. Samuels*, 415 U.S. App. D.C. 354, 363; 787 F.3d 1142, 1151 (D.C. Cir. 2015) (citations omitted). [1]

It beggars belief that, especially at this moment in American history, any party before any court would argue that there is not a significant public interest in knowing which police officers hurt which people and which people get paid for that malfeasance. Yet the Park Police calls these actions "insubstantial claims of assault" resolved with "relatively small" settlements. Defendant's Reply in Support of Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, ECF No. 27, pp. 5-6.

To the contrary— when armed, uniformed agents of the United States injure members of the public it is not an "insubstantial" occurrence. When the government pays those members of the public roughly one-half of the average American's annual income, the amounts are not "small." *See* United States Census Bureau, QuickFacts,

https://www.census.gov/quickfacts/fact/table/US/INC910219 (per capita average income is $34,103). At the core, the public has the right to know information about police officer wrongdoing.

III.     **The Defendant Provided No Support for Its Claw Back Request**

Finally, the Park Police has asked to claw back two claimant names. One is the name of the woman assaulted at the Lincoln Memorial, whose name was revealed in the produced documents, the electronic file name of the documents, and the *Vaughn* Index. The other is the name of a

---

[1] As explained in HRDC's Opposition to United States Park Police's Motion for Summary Judgment and Cross-Motion for Summary Judgment, ECF No. 24, it was previously named Prison Legal News, a name retained by its flagship journal.

woman with equal employment opportunity claims, whose complaint of supervisor discrimination based on sex and age was settled for $50,000.

In support of its claw back attempt, the Defendant cites only Federal Rule of Evidence 502(b), which is inapplicable. By its terms, Rule 502 only applies to materials covered by the attorney-client privilege or work-product protection. Fed Rules Evid R. 502. The names at issue are not either of those. The Defendant has no basis for the claw back attempt.

***

Accordingly, the court should grant HRDC's Cross-Motion for Summary Judgment and order the United States Park Police to release the names hidden in the three tort claims at issue. Further, the court should hold that there is no basis for the agency to claw back information it released through FOIA.

Dated: July 22, 2021

Respectfully submitted,

*/s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

Counsel for Human Rights Defense Center